UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


SALLY BUTLER,

       Plaintiff,　　　　　　　　　　　　　　　　Hon. Robert J. Jonker

v.　　　　　　　　　　　　　　　　　　　　　　Case No. 1:14-CV-768

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

       This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## STANDARD OF REVIEW

       The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security

case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## **PROCEDURAL POSTURE**

Plaintiff was 52 years of age on her alleged disability onset date. (Tr. 166, 178). She successfully completed high school and worked previously as a bookkeeper and office manager. (Tr. 28, 63). Plaintiff applied for benefits on March 14, 2011, alleging that she had been disabled since September 1, 2009, due to chronic pain, fibromyalgia, sleep apnea, depression, and asthma. (Tr. 166-67, 178, 183). Plaintiff's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 74-165). On September 27, 2012, Plaintiff appeared before ALJ Edward Studzinski with testimony being offered by Plaintiff and a vocational expert. (Tr. 16-73). In a written decision dated November 21, 2012, the ALJ determined that Plaintiff was not disabled. (Tr. 89-100). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 104-08). Plaintiff subsequently initiated this pro se action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on June 30, 2012. (Tr. 91). Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that she became disabled prior to the expiration of her insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*,

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffers from: (1) residuals from spinal fusion; (2) asthma; and (3) obesity, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 91-95).

With respect to Plaintiff's residual functional capacity, the ALJ determined that as of the date Plaintiff's insured status expired she retained the capacity to perform light work subject to the following limitations: (1) she can occasionally lift/carry 10 pounds and can frequently lift/carry lesser amounts; (2) during an 8-hour workday, she can sit and stand/walk for 6 hours each; (3) she must be able to alternate between sitting, standing, and walking; (4) she cannot maintain any one position (sitting, standing, or walking) for longer than 60 minutes without alternation; (5) when alternating positions, she is able to continue tasks and need not abandon her workstation; (6) she can occasionally climb ramps/stairs, but can never climb ladders, ropes, and scaffolds; (7) she can occasionally stoop, crouch, kneel, and crawl and can frequently balance; and (8) she must avoid concentrated exposure to extreme cold and respiratory irritants like fumes, odors, dusts, and gases. (Tr. 95). A vocational expert testified that if limited to the extent reflected in the ALJ's RFC determination, Plaintiff would be able to perform her past relevant work as an office manager. (Tr. 61-67). Accordingly, the ALJ concluded that Plaintiff was not entitled to benefits.

**I.       Section 1.04 of the Listing of Impairments**

The Listing of Impairments, detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1, identifies various impairments which, if present to the severity detailed therein, result in a finding that the claimant is disabled. Plaintiff asserts that she is entitled to relief because she satisfies the requirements of Section 1.04 of the Listing of Impairments.

Section 1.00 of the Listing addresses disorders of the musculoskeletal system, including those resulting from "degenerative processes, traumatic or developmental events." 20 C.F.R., Part 404, Subpart P, Appendix 1, § 1.00. Plaintiff asserts that she satisfies Sections 1.04(A) and 1.04(C) which provide as follows:

> *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture) resulting in compromise of a nerve root. . .or the spinal cord.
>
> [Combined w]ith:
>
> A.   Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or. . .
>
> C.   Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.[2]

---

[2] Section 1.00(B)(2)(b) defines "inability to ambulate effectively" as "an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." 20 C.F.R., Part 404, Subpart P, Appendix 1, § 1.02(B)(2)(b)(1). Ineffective ambulation "is defined generally as having

20 C.F.R., Part 404, Subpart P, Appendix 1, § 1.04.

The medical evidence does not support the contention that Plaintiff satisfies this particular Listing. Plaintiff underwent spinal fusion surgery in September 2008. (Tr. 286-88). Treatment notes dated January 6, 2009, indicate that Plaintiff was doing "excellent" both radiographically and clinically. (Tr. 289, 297). Treatment notes dated March 6, 2009, indicate that Plaintiff's radiculopathy had resolved and she was presently working. (Tr. 397). On April 9, 2009, Plaintiff reported that she was "significantly improved." (Tr. 265-66). On July 1, 2009, Plaintiff reported that she was working two jobs and was also serving as the music director for the Paw Paw Village Players. (Tr. 385). Plaintiff rated her pain as 2/10. (Tr. 384).

On October 8, 2009, Plaintiff reported that she was seventy percent better "at least" and was gardening 20 hours weekly. (Tr. 263). X-rays taken the same day were unremarkable. (Tr. 262). Treatment notes dated December 22, 2009, indicate that Plaintiff was "stable" on her current medication regimen. (Tr. 376). Treatment notes dated August 24, 2010, indicate that Plaintiff's medications were "very beneficial" in treating her back pain. (Tr. 356). With respect to Plaintiff's depression, Plaintiff's doctor reported that Plaintiff was "doing quite well" on her current medication. (Tr. 356). While subsequent treatment notes suggest that Plaintiff's condition regressed, Plaintiff's condition did not meet or equal this listing. Likewise, there is no evidence that Plaintiff experienced nerve root compression and sensory or reflex loss, as required by Section 1.04(A), or lumbar spinal stenosis and inability to ambulate effectively, as required by Section 1.04(C). (Tr. 475-591).

---

insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." *Id.* To ambulate effectively, claimants "must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out the activities of daily living." 20 C.F.R., Part 404, Subpart P, Appendix 1, § 1.02(B)(2)(b)(2).

7

The ALJ specifically addressed whether Plaintiff satisfied this particular Listing concluding that Plaintiff did not satisfy the requirements of this Listing in question. (Tr. 94-95). The burden rests with Plaintiff to demonstrate that she satisfies the requirements of a listed impairment. *See Kirby v. Comm'r of Soc. Sec.*, 2002 WL 1315617 at *1 (6th Cir., June 14, 2002). The ALJ evaluated the evidence of record and determined that Plaintiff failed to meet her burden. The ALJ's decision in this regard is supported by substantial evidence.

**II.        Treating Physician Opinion**

On September 13, 2012, Dr. James Carow opined that Plaintiff can "only lift 10 to 15 pounds occasionally" and "needs to shift her position every 20 to 30 minutes." (Tr. 592). The doctor also reported that Plaintiff "needs repeated breaks throughout the day" and has been disabled for the past 20 years. (Tr. 592). The ALJ afforded "little weight" to Dr. Carow's opinion. (Tr. 99). Plaintiff argues that because Dr. Carow was her treating physician, the ALJ was obligated to accord controlling weight to his opinions.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the

9

examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).

The ALJ incorporated certain aspects of Dr. Carow's opinion. The ALJ concluded that Plaintiff could not lift more than 10 pounds and needed to frequently change positions. However, the ALJ did not adopt the opinion that Plaintiff needs "repeated breaks throughout the day" on the ground that such was not supported by the medical evidence. This conclusion is supported by substantial evidence. As for the doctor's opinion that Plaintiff had been disabled for the past 20 years, the ALJ rejected such on the ground that it was contradicted by Plaintiff's work history. This conclusion is likewise supported by substantial evidence. Moreover, whether Plaintiff is disabled is a determination reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d)(1). Thus, the ALJ was not obligated to afford any deference to this particular aspect of Dr. Carow's opinion. Accordingly, this argument is rejected.

**III.      Medical-Vocational Guidelines**

The medical-vocational guidelines, also known as the "grids," consider four factors relevant to a particular claimant's employability: (1) residual functional capacity, (2) age, (3) education, and (4) work experience. 20 C.F.R., Part 404, Subpart P, Appendix 2. Social Security regulations provide that "[w]here the findings of fact made with respect to a particular individual's

vocational factors and residual functional capacity coincide with all the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled." 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00. In other words, a claimant may be awarded benefits if she satisfies the requirements of one of the particular rules correlating to a finding of disability. *See Russell v. Commissioner of Social Security*, 20 F. Supp.2d 1133, 1134 (W.D. Mich. 1998).

Plaintiff alleges that she is entitled to relief because she satisfies the requirements of Grid Rules 201.06 and 201.14. The Grids are only applicable, if at all, at step five of the aforementioned sequential process. *See Jordan v. Commissioner of Social Security*, 548 F.3d 417, 424 (6th Cir. 2008). The ALJ, however, found that Plaintiff, because she could perform her past relevant work, was not disabled at step four of the sequential process. Thus, consideration of the Grids was neither necessary nor appropriate.

**IV.        Plaintiff is Not Entitled to a Sentence Six Remand**

As part of her request to obtain review of the ALJ's decision, Plaintiff submitted to the Appeals Council additional evidence which was not presented to the ALJ. (Tr. 593-94). Specifically, Plaintiff seeks to introduce the results of a lumbar spine CT scan performed on October 16, 2012. The Appeals Council received the evidence into the record and considered it before declining to review the ALJ's determination. This Court, however, is precluded from considering such material. In *Cline v. Commissioner of Social Security*, 96 F.3d 146 (6th Cir. 1996), the Sixth Circuit indicated that where the Appeals Council considers new evidence that was not before the ALJ, but nonetheless declines to review the ALJ's determination, the district court cannot consider

such evidence when adjudicating the claimant's appeal of the ALJ's determination. *Id.* at 148; *see also*, *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007) (quoting *Cline*, 96 F.3d at 148).

If Plaintiff can demonstrate, however, that this evidence is new and material, and that good cause existed for not presenting it in the prior proceeding, the Court can remand the case for further proceedings during which this new evidence can be considered. *Cline*, 96 F.3d at 148. To satisfy the materiality requirement, Plaintiff must show that there exists a reasonable probability that the Commissioner would have reached a different result if presented with the new evidence. *Sizemore v. Secretary of Health and Human Serv's*, 865 F.2d 709, 711 (6th Cir. 1988). Plaintiff bears the burden of making these showings. *See Hollon ex rel. Hollon v. Commissioner of Social Security*, 447 F.3d 477, 483 (6th Cir. 2006).

While Plaintiff has requested that the Court remand this matter for consideration of the evidence in question, she has failed to articulate good cause for her failure to present the evidence to the ALJ. While Plaintiff is correct that the CT scan in question was not performed until shortly after the administrative hearing, she has failed to explain why the examination in question could not have been performed prior to the administrative hearing. Moreover, it is not reasonable to conclude that consideration of the evidence in question would have lead to a different result. First, the CT scan in question was performed long after expiration of Plaintiff's insured status. While the results of the CT scan suggest a worsening of the degenerative changes in Plaintiff's lumbar spine, there is no indication that such results in greater limitations than the ALJ recognized. Moreover, even if it is assumed that the results of the CT scan suggest greater functional limitations than the ALJ recognized, there is nothing to suggest that such increased limitations were present prior to the

expiration of Plaintiff's insured status.  Accordingly, the Court cannot consider this evidence and there exists no basis for remanding the matter for consideration of such.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence.  Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date:  July 2, 2015               /s/ Ellen S. Carmody
                                  ELLEN S. CARMODY
                                  United States Magistrate Judge